FILED

2008 May-27  AM 11:34
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| EDWARD ALAN BUTLER, Administrator *Ad Litem* for the Estate of Cassandra D. Butler, deceased, | } } } } } | CIVIL ACTION NO. 07-AR-0652-S |
| Plaintiff, | } } | |
| v. | } } | |
| PERSONNEL BOARD OF JEFFERSON COUNTY, ALABAMA, | } } } | |
| Defendant. | } | |

**MEMORANDUM OPINION**

Before the court is the motion of defendant, the Personnel Board of Jefferson County ("the Board"), for summary judgment in the above-entitled action brought by plaintiff, Edward Alan Butler, as administrator for the estate of Cassandra D. Butler ("Butler"), the now-deceased original plaintiff. Plaintiff brings claims pursuant to the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.* and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.* For the reasons that follow, the Board's motion will be granted.

*Summary Judgment Facts*[1]

Butler began her employment with the Board on October 20, 2003, as a Training and Development Advisor II.  Her job required her to design, develop, and teach training classes on various types of computer hardware and software utilized by the Board and the various jurisdictions under its purview.  Evelyn Ray ("Ray") was Butler's direct supervisor.  Butler suffered from fibromyalgia, deep venous thrombosis, arthritis, and chronic fatigue syndrome.  Shortly after Butler began her employment with the Board, she complained to Ray that the handicapped parking spaces available to employees were frequently occupied, rendering her unable to take advantage of her handicapped parking tag and forcing her to park some distance away from the building where she worked.  In response to Butler's complaint, Ray helped Butler obtain an assigned parking space in an adjacent parking deck.  On May 19, 2004, Ray granted Butler's request for permission to take Fridays off for four months in order to travel to a clinic in Georgia to receive treatment for her fibromyalgia.  However, according to Butler, she stopped going to the clinic after one

---

[1] Summary judgment is appropriate where the moving party demonstrates that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).  In assessing whether the movant has met his burden, the court must view the evidence, and all inferences drawn therefrom, in the light most favorable to the non-movant.  *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 918 (11th Cir. 1993).

month because Ray expressed displeasure about the amount of time she was missing from work. Additionally, in August of 2004, the Alabama Department of Rehabilitative Services assessed Butler's work area and made certain recommendations as to how it could be improved. Plaintiff alleges that the Personnel Board did not follow all of the recommendations, but he does concede that Butler was provided with a new chair and that Ray gave her a computer stand.

On April 25, 2005, Butler requested accommodation under the ADA in the form of being able to work from home on certain days and being able to come into work late on some days. Upon submitting her requests to Ray, she was informed that her requests would not be granted or denied immediately and would be kept under consideration. Consequently, Butler requested intermittent leave pursuant to the FMLA on the same day. On May 5, 2005, Butler was notified that her FMLA leave request had been granted. While on FMLA leave, Butler was permitted to come into work late or not at all on days when she was not feeling well. However, plaintiff claims that the Board improperly refused to count the hours Butler worked after 5:30 p.m., thereby interfering with her FMLA leave rights by causing her to lose credit for hours she actually worked. Plaintiff further claims that the Board eventually realized that it was calculating

Butler's FMLA leave time incorrectly and, consequently, issued her a check for approximately $100 to compensate her for hours she had worked.  However, plaintiff contends that the $100 did not even begin to adequately compensate his decedent for the hours she actually worked.

On October 26, 2005, the Board notified Butler via letter that she had 87.25 hours of FMLA leave remaining.  In the same letter, it advised her that she could set her work schedule as any continuous nine hour period between 7:00 a.m. and 5:30 p.m. (with one hour for lunch) and that it needed additional medical information from her doctor in order to evaluate her requests for ADA accommodations.  Specifically, the Board requested information about Butler's specific medical conditions, a description of the specific ways that her conditions impacted her major life activities, and a description of the specific accommodations that would allow her to perform the essential functions of her job. The letter also advised Butler that she could request a medical leave of absence if necessary.

On December 20, 2005, the Board notified Butler that she had exhausted her FMLA leave and again requested information from her doctor to aid in its evaluation of her request to be able to work from home on certain days. In response to the Board's requests, Dr. Emmanual Odi ("Dr. Odi"), Butler's physician, submitted two

4

letters to the Board that attempted to more fully describe Butler's conditions and how they could be accommodated.   On February 28, 2006, apparently dissatisfied with the information provided by Dr. Odi, the Board denied Butler's accommodation requests because she could not perform the essential functions of her job while working from home.   The Board further notified Butler that it could not, based on the information provided by Dr. Odi, determine whether she had an ADA-qualifying disability.

On March 1, 2006, after noticing that Butler was late in arriving to teach her classes in the mornings, Ray instructed her to be at work thirty (30) minutes prior to the beginning of her 8:30 class.   Ray also inquired as to whether Butler needed to alter her class starting time.   The next day Butler requested permission to work from 10:00 a.m. until 6:30 p.m. with a thirty (30) minute lunch break.   One day later, Lorren Oliver ("Oliver"), the Personnel Director, notified Butler that she was not entitled to a special schedule because her ADA accommodation request had been denied and reminded her that she was required to work a continuous nine hour schedule like other Board employees.

On March 10, 2006, Butler submitted a complaint against Ray and Helena Bewley ("Bewley"), one of her fellow trainers, to the Board's Employee Relations Department alleging that they made harassing and discriminatory comments about her medical

conditions.   Butler's complaint was largely predicated on the contention that Ray and Bewley had made comments and engaged in behavior that suggested that they did not believe that fibromyalgia was a real disability and/or that Butler was not suffering as much as she claimed.   On May 23, 2006, after conducting an investigation of the matter, Oliver notified Butler of his conclusion that her complaints against Ray and Bewley were unsubstantiated.

On March 22, 2006, Butler met with Ray and Oliver about her attendance and the possibility of working part-time.   In a post-meeting memorandum, Ray offered Butler the opportunity to submit an official request to change her job to a part-time position. In the same memorandum, Ray advised Butler that attendance and punctuality were "critical job requirements" and that failure to adhere to the Board's attendance policy would result in disciplinary action.   Butler never formally requested to work part-time, but she alleges that she asked for more information about the possibility of doing so and never received the information she sought.

Between late March and early June of 2006, Butler repeatedly arrived to work late or not at all.   On April 6, 2006, Ray issued Butler a "final warning" that she would be subject to disciplinary action if her tardiness and absenteeism did not

improve.   Four days later, Butler requested a six month medical leave of absence and for the Board to consider her for "consulting" jobs while she was on her leave of absence.   On May 16, 2006, the Board notified Butler of its decision to deny her a medical leave of absence because such an absence would create an intolerable hardship on the training department.

On April 17, 2006, Ray issued a Notice of Contemplated Disciplinary Action to Butler as a result of her tardiness and absenteeism.   Butler, Ray, and Oliver met the next day to discuss the matter.   The Board subsequently suspended Butler for five days without pay.   According to plaintiff, Butler's attendance problems were caused by her medical conditions.   Specifically, plaintiff alleges that Butler's difficulty sleeping and waking up in the morning prevented her from arriving at work on time or at all.   However, plaintiff adverts that Butler was usually able to perform the essential functions of her job by working later than 5:30 p.m. and that she would have been able to perform her duties all of the time if her ADA accommodation requests had been granted.

On June 1, 2006, Oliver notified Butler that he was recommending that she be terminated because of her habitual violations of the Board's attendance and tardiness policies.   On June 7, 2006, after a hearing with Butler, her attorney, Ray,

7

Oliver, and the Board's general counsel, Oliver notified Butler that her employment would be terminated effective June 8, 2006. At some point thereafter, Butler filed a notice of appeal with the Board.

Butler's filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on June 8, 2006. The EEOC issued a right to sue letter on January 9, 2007. While her appeal to the Board was still pending, Butler filed her complaint in this court on April 10, 2007 presenting claims of: 1) ADA discrimination, 2) ADA retaliation, 3) FMLA interference, and 4) FMLA retaliation. In December of 2007, Butler tragically passed away as the result of an automobile accident. Following her death, the court appointed Edward Alan Butler as administrator *ad litem* for her estate and substituted him as the proper party plaintiff.

*Discussion*

**ADA Discrimination Claim**

The ADA provides that no employer shall discriminate against "a qualified individual with a disability because of the disability of such individual in regard to . . . the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a) (2000). In order to establish

8

a *prima facie* case of ADA discrimination, plaintiff must demonstrate that Butler was: (1) disabled; (2) a qualified individual; and (3) subjected to unlawful discrimination because of her disability. *Rossbach v. City of Miami*, 371 F.3d 1354, 1356-57 (11th Cir. 2004). An employer unlawfully discriminates against a qualified individual with a disability when the employer fails to provide "reasonable accommodations" for the disability, unless doing so would impose undue hardship on the employer. 42 U.S.C. § 12112(b)(5)(A).[2] If a plaintiff fails to establish this *prima facie* case, the employer is entitled to a judgment as a matter of law. *Gordon v. E.L. Hamm & Assocs.*, 100 F.3d 907, 915 (11th Cir. 1996).

*1. Estoppel*

To be a "qualified individual with a disability" under the ADA, "a person must be able to perform the essential functions of his or her job with or without a reasonable accommodation." *See Wood v. Green*, 323 F.3d 1309, 1312 (11th Cir. 2003). "'Essential functions' are the fundamental job duties of a position that an individual with a disability is actually required to perform." *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1365 (11th Cir. 2000).

---

[2] The familiar *McDonnell Douglas* burden-shifting framework does not apply to ADA failure to accommodate claims. *See Nadler v. Harvey*, 2007 WL 2404705 at *8-9 (11th Cir. Aug. 24, 2007).

Here, the Board credibly argues that plaintiff is estopped from contending that Butler was a "qualified individual" because he has not offered any explanation for the inconsistency between Butler's filing of a social security total disability claim and the assertion in this case that she could have performed the essential functions of her job with reasonable accommodations. In order to qualify for social security disability benefits, an applicant must establish that she is "not only unable to do h[er] previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy." *See* 42 U.S.C. § 423(d)(2)(A). Butler applied for social security disability benefits on July 11, 2006. On April 17, 2007, the Social Security Administration determined that she was "disabled as of June 9, 2006 because of fibromyalgia, depression, degenerative joint disease of the right knee and hypertension, impairments so severe that [she was] unable to perform any work existing in significant numbers in the national economy." (Pl.'s Ex. A-1.) "Although the pursuit and receipt of SSDI benefits does not automatically estop the recipient from pursuing an ADA claim . . . . an ADA plaintiff cannot simply ignore her SSDI contention that she was too disabled to work. To survive a defendant's motion for summary judgment, she must explain why that SSDI contention is consistent with her ADA claim that she

10

could 'perform the essential functions' of her previous job, at least with 'reasonable accommodations.'" *Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 797-98, 119 S. Ct. 1597, 1600 (1999); *see also Slomcenski v. Citibank, N.A.*, 432 F.3d 1271, 1280 (11th Cir. 2005) ("Because the ADA reserves its protections for individuals still able to perform the essential functions of a job, albeit perhaps with reasonable accommodation, a plaintiff who is totally disabled and unable to work at all is precluded from suing for discrimination thereunder."). In *Cleveland*, the Supreme Court went on to make clear that "an ADA plaintiff cannot simply ignore the apparent contradiction that arises out of the earlier SSDI disability claim. Rather, she must proffer a **sufficient explanation**." *Id.* at 806 (emphasis added).

Plaintiff has made no effort to provide an explanation, much less a sufficient one, for the contradiction between her SSDI claim and her ADA claim. Therefore, the Board is entitled to summary judgment on the ADA discrimination claim.

*2. "Disabled Person"*

Assuming *arguendo* that plaintiff had offered a sufficient explanation for the conflict between her SSDI and ADA claims, the Board would still be entitled to judgment as a matter of law because plaintiff has failed to establish that Butler qualified as disabled under the ADA.

The ADA defines a "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2).[3]   One is *substantially limited* when an impairment "prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives."[4] *Toyota Motor Mfg. v. Williams*, 534 U.S. 184, 198, 122 S. Ct. 681, 691 (2002).   The impairment must also be permanent or long term. *Id.*   The Supreme Court has made clear that the determination of whether a disability exists is to be made on a case-by-case basis. *Id.*   However, the terms of the statute are to be "interpreted strictly to create a demanding standard for qualifying as disabled." *Id.* at 197.

*A. Actual Diability*

It is difficult to ascertain which specific major life activities where purportedly adversely impacted by Butler's medical impairments because plaintiff's response in opposition to

---

[3] Plaintiff argues that Butler's disability falls into at least two of the three categories of disability but does not bother to enlighten the court as to which two those are.  Apparently, plaintiff wants the court to figure it out on its own.

[4] The EEOC defines the phrase "substantially limits" to mean: "(i) Unable to perform a major life activity that the average person in the general population can perform; or (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1).

summary judgment mentions virtually every major life activity under the sun. Happily, it is not necessary for the court to figure out exactly which life activities are at issue because plaintiff has not submitted sufficient evidence to establish a substantial impairment in any major life activity.

Plaintiff appears to be under the impression that he can survive the Board's motion for summary judgment by simply reciting the list of impairments that Butler allegedly suffered from and by citing to two letters from Dr. Odi. However, "[m]erely having an impairment does not make one disabled for purposes of the ADA." *Toyota*, 534 U.S. at 195, 122 S. Ct. at 690. Furthermore, "[i]t is insufficient for individuals attempting to prove disability status . . . to merely submit evidence of a medical diagnosis of an impairment. Instead, the ADA requires those claiming the Act's protections . . . to prove a disability by offering evidence that the extent of the limitation [caused by their impairment] in terms of their own experience . . . is substantial." *Id.* at 198 (internal quotation marks omitted).

The only specific statements in the two letters from Dr. Odi with respect to how Butler's impairments limited her major life activities consists of the following: 1)"She cannot stand for over 30 minutes at any time," 2)"Ms. Butler cannot lift anything above 5 [pounds]," and 3) "She is unable to stand for more than 5

minutes in a 2 hour period of time when she is having exacerbation of her symptoms. At other times when her disease is quiescent she may be able to stand for about 15-20 minutes but not longer in a 2 hour period."[5] (Pl.'s Ex. E & F.)

These statements in Dr. Odi's letters relate to two life activities: standing and lifting.  As to the contentions that Butler could not stand for more than 5-30 minutes in a two hour period, plaintiff has failed to offer any proof that such a diminished activity tolerance is "[s]ignificantly restricted . . . as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity."  *See Hilburn v. Murata Elec. N.A., Inc.*, 181 F.3d 1220, 1226 (11th Cir. 1999) (*quoting* 29 C.F.R. § 1630.2(j)(1)(ii)).  The Eleventh Circuit has made clear that a "diminished activity tolerance" is not the same as a "substantial limitation" and that someone who performs a particular activity "moderately below average" is not disabled under the ADA. *See Rossbach* 371 F.3d at 1358; *Chanda v. Engelhard/ICC*, 234 F.3d

---

[5] In her official request for accommodation under the ADA, Butler states that she is unable to get more than 3-4 hours of sleep during the night. (Pl.'s Ex. 13.) Sleeping is a major life activity. *See Nadler*, 2007 WL 2404705 at *5.  However, the Eleventh Circuit has noted that "'[d]ifficulty sleeping is extremely widespread' and that a plaintiff must present evidence . . . that [her] affliction is [] worse than [that] suffered by a large portion of the nation's adult population." *Id.* at *6 (*quoting Rossbach*, 371 F.3d at 1358). Plaintiff has failed to present any evidence that would allow the court to conclude that Butler's ability to sleep was substantially limited as compared to the average adult.

1219, 1222 (11th Cir. 2000). Additionally, Dr. Odi's letters do not provide any evidence of how frequently Butler's conditions were exacerbated such that she could only stand for five minutes every two hours.[6]  Could Butler stand for thirty minutes most of the time?   How often did Butler experience a period of exacerbation?   During what percentage of the day or week were Butler's conditions "quiescent"?   Although plaintiff bears the burden of proof on all of these questions, he has not offered the court any evidence that would allow it to determine whether Butler's purported difficulty standing for more than 5-30 minutes in a two hour period constitutes a "substantial limitation" as compared to the average person in the general population.   As such, no jury could be allowed to find that Butler's ability to stand was "substantially limited."

With respect to Dr. Odi's statement that Butler could not lift more than five pounds, the court finds that "lifting" is not a major life activity because it is only one aspect of the recognized major life activity of "performing manual tasks." *See*

---

[6] Courts, including the Eleventh Circuit, frequently look to EEOC regulations to assess whether a physical impairment substantially limits a major life activity. *See Hilburn*, 181 F.3d at 1226.  According to the EEOC, the following factors should be considered in making this analysis: 1) the nature and severity of the impairment, 2) the duration or expected duration of the impairment, and 3) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment. *Id.* (*quoting* 29 C.F.R. § 1630.2(j)(2)).  Without a more specific description of how frequently Butler's impairments manifested themselves in their most severe form, the court is unable to apply the above-listed factors.

29 C.F.R. § 1630.2(i).  In *Chanda*, the Eleventh Circuit held that "a plaintiff must demonstrate that [s]he is substantially limited in a range of manual tasks rather than a narrow category thereof." 234 F.3d at 1223; *see also Carr v. Publix Super Markets, Inc.*, 170 Fed. Appx. 57, 60 n.3 (11th Cir. 2006) ("[W]e doubt that a lifting limitation states a *per se* ADA disability.").

To the extent that plaintiff is arguing that Butler was substantially limited in the major life activity of working, such a claim is foreclosed by the fact that Butler sought and obtained employment after she was terminated from her position with the Board.  Butler worked for two different companies after her termination, in addition to starting her own company. (Def.'s Ex. AA, p. 8.)  "If jobs utilizing an individual's skills are available, that individual is not considered substantially limited in her ability to work." *Cash v. Smith*, 231 F.3d 1301, 1306 (11th Cir. 2000); *see also Sutton* v. *United Air Lines, Inc.*, 527 U.S. 471, 492, 119 S. Ct. 2139, 2151 (1999) ("If jobs utilizing an individual's skills . . . are available, one is not precluded from a substantial class of jobs.").  Therefore, no jury could find that Butler's ability to work was substantially impaired.

*B. "Regarded As" Disabled*

Plaintiff also contends, somewhat sheepishly, that the Board regarded Butler as disabled because it found that she was unable to perform the essential functions of her job.  The ADA provides that one who is "regarded" as having an impairment that substantially limits one or more major life activities qualifies as a "disabled" person. 42 U.S.C. § 12102(2)(c).  In order for a plaintiff to prevail on this theory, she must show two things: "(1) that the perceived disability involved a major life activity; and (2) that the perceived disability is 'substantially limiting' and significant." *Rossbach*, 371 F.3d at 1360 (*quoting Sutton v. Lader*, 185 F.3d 1203, 1209 (11th Cir. 1999)).

Plaintiff points to a single piece of evidence to support his "regarded as" argument—the Board's February 28, 2006 letter to Butler denying her accommodation requests.  In that letter, the Board informed Butler:

> Despite repeated dialogue with your medical care provider, Dr. Odi[,] about your condition, fibromyalgia, we still do not have sufficient information upon which to determine whether you have a disability under the Americans with Disabilities Act. Nevertheless, your request for accommodations is denied because based on information from Dr. Odi, it appears that you are not able to perform the essential functions of your job as a Training Advisor II.

(Def.'s Ex. J.)  The letter made clear that the Board was unable to determine whether Butler had an ADA-qualifying disability but

17

stated that, even if she did, the accommodations requested would not allow her to perform the essential functions of her job (*i.e.*, attendance). Additionally, as correctly pointed out by the Board, "to be regarded as substantially limited in the major life activity of working, one must be regarded as precluded from more than a particular job." *Murphy v. United Parcel Serv.*, 527 U.S. 516, 523, 119 S. Ct. 2133, 2138 (1999). Here, even assuming that the Board perceived Butler has being unable to perform her job as a training advisor, there is no evidence that the Board regarded Butler as being unable to perform other jobs. Therefore, the letter does not even come close to establishing that the Board regarded Butler as having a substantially limiting impairment.

## C. Record of a Disability

In order to qualify as disabled through a record of impairment, one must prove that "a record relied on by an employer indicates that the individual has or has had a substantially limiting impairment." *See Hilburn*, 181 F.3d at 1229 (*quoting* 29 C.F.R. § 1630.2(k)). "To establish a record of impairment under the ADA sufficient to be considered disabled, the record of impairment must show that the impairment substantially limited the claimant in one or more of [her] major life activities." *Carr*, 170 Fed. Appx. at 61. Therefore, in

order to establish an ADA claim based on a record of disability, "a plaintiff must show that at some point in the past, the employer relied upon a record which either classified or misclassified that individual as having a physical or mental impairment that substantially limits a major life activity." *Phillips v. Wal-Mart Stores, Inc.*, 78 F. Supp. 2d 1274, 1286-87 (S.D. Ala. 1999).

Plaintiff points to three records in support of his record of disability theory: 1) Butler's handicap parking tag, 2) the letters from Dr. Odi, and 3) the SSDI determination. However, these records, individually or collectively, are not sufficient to establish that Butler was disabled. A handicapped parking tag is insufficient to establish that one is substantially limited in a major life activity because it is not known on what basis the tag was issued. *See Robinson v. Hoover Enters. LLC*, 2004 WL 2792057 at *5 (N.D. Ga. Oct. 20, 2004) ("Certification or diagnosis of a disability for purposes of a parking permit falls short of the exacting standards of qualifying as disabled under the ADA."). Similarly, for the reasons stated above, Dr. Odi's letters are insufficient to establish a record of a substantial impairment in a major life activity. Finally, the Social Security Administration's determination that Butler qualified for disability benefits does not establish a record of disability

because it was not issued until after Butler was terminated, meaning that the Board could not possibly have relied upon it.

3. *Qualified Individual*

Even if Butler was disabled under the ADA, plaintiff has failed to prove that she was a "qualified individual" with a disability. "To be a 'qualified individual' under the ADA, a person must be able to perform the essential functions of his or her job with or without a reasonable accommodation." *Wood*, 323 F.3d at 1312. "'Essential functions' are the fundamental job duties of a position that an individual with a disability is actually required to perform." *Earl*, 207 F.3d at 1365. In determining whether a particular job duty is an essential function, "consideration shall be given to the employer's judgment . . . and if an employer has prepared a written description . . . for the job, this description shall be considered evidence of the essential functions of the job." *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1258 (11th Cir. 2001) (*quoting Earl*, 207 F.3d at 1365). "The plaintiff bears the burden of identifying an accommodation, and of demonstrating that the accommodation allows [her] to perform the job's essential functions." *Id.* at 1255-56; *see also Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1286 (11th Cir. 1997) ("[T]he burden of identifying an accommodation that would allow a

20

qualified individual to perform the job rests with that individual, as does the ultimate burden of persuasion with respect to demonstrating that such an accommodation is reasonable."). It is abundantly clear that Butler could not perform the essential functions of her job without accommodations. She admitted to being tardy or missing work eleven times during May of 2006--the month before she was fired. (Def.'s Ex. A at 267.) Therefore, the question becomes whether she could have performed her job with reasonable accommodations.

The accommodations requested by Butler were essentially to be able to come to work late or not at all on days she was not feeling well.[7] In his November 16, 2005 letter to the Board explaining what accommodations would be necessary, Dr. Odi noted that "it is impossible to predict the course of [Butler's] illness" and warned that she experiences "periods of exacerbation which could last a few weeks to months." (Pl.'s Ex. E.) In his January 5, 2008 follow-up letter, Dr. Odi recommended that Butler "be allowed to work from home sometimes when she is having more pain than usual" and noted that "it would be impossible for me to tell you how often this [working from home] will be necessary as this would depend on the course of her illness." (Pl.'s Ex. F)

---

[7] In her deposition, Butler acknowledged that being able to come in late and being able to work from home were the only ADA accommodation requests she made to the Board. (Def.'s Ex. A at 211.)

However, Dr. Odi stated that Buter would be able to "come to work as usual" on days when she had "reduced pain." *Id.*  Additionally, he noted that Butler's job description requires "considerable standing"[8] and went to great pains to emphasize that she was unable to stand for more than five minutes in a two hour period during a period of exacerbation, which could last for weeks or months.  However, he did not suggest any specific accommodation to address Butler's difficulty standing.

The Board denied Butler's accommodation requests because coming in late or working from home on days when she was not feeling well could not possibly allow her to perform the essential functions of her job.  Specifically, the Board noted:

> Mandatory attendance at work, driving to member jurisdictions, considerable standing and some moderate lifting of equipment and training materials are integral aspects of the job.  Dr. Odi indicates that due to your current medical condition you are not able to perform some and/or all of the duties of your job. Therefore, Dr. Odi has recommended that you be allowed to work at home as an accommodation.  The request is denied because it will not allow you to perform the essential functions of your job as a Trainer Advisor II.

(Def.'s Ex. J.)

The court agrees with the Board that the accommodations requested by Butler would not have allowed her to perform the essential functions of her job.  It goes without saying that one

---

[8] *See* Def.'s Ex. B.

of the essential functions of any job is attendance.  It is undisputed that Butler could not teach her training courses while at home.  "An employee who cannot meet the attendance requirements of the job at issue cannot be considered a 'qualified' individual protected by the ADA." *Tyndall v. Nat. Educ. Ctrs., Inc.*, 31 F.3d 209, 213 (4th Cir. 1994); *see also Robinson v. Fulton County, Ga.*, 2008 WL 78711 at *22 (N.D. Ga. Jan. 4, 2008) ("Courts have consistently held that the ability to be present on the job and to complete all assigned tasks within a reasonable period of time is essential to any job.").  "An employee who does not come to work cannot perform any of [her] job functions, essential or otherwise." *Tyndall*, 31 F.3d at 213 (internal quotations omitted).

Furthermore, the accommodations requested by Butler would not have allowed the Board to predict with any degree of certainty when she would be at work and when she would not be. In *Jackson v. Veterans Administration*, 22 F.3d 277, 279 (11th Cir. 1994), an ADA plaintiff who was a housekeeping aide for a VA hospital had requested and been denied the accommodations of being able to swap days with other employees or delay his shift start time on days when he had a "flare-up" of his arthritis. The *Jackson* court held that these suggested accommodations did not "address the heart of the problem, the unpredictable nature

of [plaintiff's] absences." *Id.*   Like the accommodations
requested in *Jackson*, the accommodations requested by Butler fail
to address the unpredictable nature of her absences and the
uncertain course of her medical conditions. *Id.*   What would
happen on a day when Butler was scheduled to teach a class but
was forced to "work from home" because her fibromyalgia was in a
period of exacerbation?   Presumably, the class she was schedule
to teach would either have to be cancelled or reassigned to a
different instructor.   However, "an employer is not required by
the ADA to reallocate job duties in order to change the essential
functions of a job." *Earl*, 207 F.3d at 1367 (internal quotation
omitted).   An employer does not have to go out of existence in
order to meet the needs of its workforce.   Because being able to
come in late or work from home on days when she was not feeling
well would not allow Butler to preform some of the essential
functions of her job, no reasonable jury could conclude that
Butler was a "qualified individual."   *See Whillock v. Delta Air
Lines, Inc.*, 926 F. Supp. 1555, 1566 (N.D. Ga. 1995) (holding
that being able to work from home is an unreasonable
accommodation).   Accordingly, the Board is entitled to a judgment
as a matter of law on plaintiff's ADA discrimination claim even
if the court was incorrect in its earlier decision based on the
social security adjudication.

**ADA Retaliation Claim**

In order to make out a *prima facie* case of retaliation, a plaintiff must show: (1) statutorily protected expression; (2) an adverse employment action; and (3) a causal link between the protected expression and the adverse action. *Collado v. United Parcel Serv.*, 419 F.3d 1143, 1158 (11th Cir. 2005).   It is undisputed that Butler's termination on June 8, 2006 constitutes an adverse employment action.  According to plaintiff's timeline, the last possible episode of protected expression occurred on April 10, 2006,[9] when Butler requested a medical leave of absence.  Assuming that to be true, the less than two month gap between the request for a leave of absence and Butler's termination might be enough temporal proximity to establish a causal connection if not for the fact that the Board was contemplating taking disciplinary action against Butler because of her habitual tardiness/absenteeism before April 10, 2006.  On April 6, 2006, Ray sent Butler a memo chastising her for being absent and tardy and giving her "a final warning" that: "if your pattern of unexcused absences, tardiness, and improper use of

---

[9] Plaintiff also suggests that May 23, 2006, the date the Board concluded its investigation of Butler's harassment grievance, is a relevant date for purposes of the ADA retaliation claim.  However, an employer's investigation of an employee's grievance does not amount to protected expression.  The causal connection clock starts to run when the employee engages in the protected expression (*i.e.*, complaining about something), not when the employer completes its investigation into the employee's complaint.

leave should continue, you shall be subject to disciplinary action, up to and including termination, as provided in the Employee Handbook and in the PBJC Rules and Regulations." (Def.'s Ex. Q.)   In retaliation cases, "when an employer contemplates an adverse employment action before an employee engages in protected activity, temporal proximity between the protected activity and the subsequent adverse employment action does not suffice to show causation." *Drago v. Jenne*, 453 F.3d 1301, 1308 (11th Cir. 2006). Because the Board was considering taking disciplinary action against Butler before she requested a medical leave of absence, plaintiff is unable to present a jury question regarding causation. Therefore, plaintiff cannot establish a *prima facie* case of ADA retaliation.

If plaintiff had been able to establish a *prima facie* case of retaliation, the Board would still be entitled to summary judgment because plaintiff cannot rebut the Board's proffered non-retaliatory reason for firing Butler, namely her record of tardiness and absences.

"Once a plaintiff has established a *prima facie* case, the employer then has an opportunity to articulate a legitimate, non-retaliatory reason for the challenged employment action.   The ultimate burden of proving by a preponderance of the evidence that the reason provided by the employer is a pretext for

Case 2:07-cv-00652-WMA   Document 27   Filed 05/27/08   Page 27 of 33

prohibited, retaliatory conduct remains on the plaintiff."
*Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir.
2001) (internal citations omitted).  Pretext in this context may
be demonstrated by revealing "such weaknesses, implausibilities,
inconsistencies, incoherencies, or contradictions in the
employer's proffered legitimate reasons for its action that a
reasonable factfinder could find those reasons unworthy of
credence." *Freytes-Torres v. City of Sanford*, 2008 WL 763216 at
*5 (11th Cir. Mar. 25, 2008) (quoting *Silvera v. Orange County
Sch. Bd.*, 244 F.3d 1253, 1258 (11th Cir. 2001)).  "A reason is
not pretext for [retaliation] unless it is shown both that the
reason was false, and that [retaliation] was the real reason."
*Burgos v. Chertoff*, 2008 WL 1808370 at *3 (11th Cir. Apr. 23,
2008) *(quoting Brooks v. County Comm'n of Jefferson County, Ala.*,
446 F.3d 1160, 1163 (11th Cir. 2006)).  The Eleventh Circuit has
also made clear that "provided that the proffered reason is one
that might motivate a reasonable employer, an employee must meet
that reason head on and rebut it, [] the employee cannot succeed
by simply quarreling with the wisdom of that reason." *Chapman v.
AI Transport*, 229 F.3d 1012, 1030 (11th Cir. 2000).

Here, far from quarreling with the Board's proffered reason,
Butler admits that she was repeatedly tardy or absent.[10] (Def.'s

---

[10] Plaintiff attempts to establish pretext by arguing that Butler's
absences were precipitated by the Board's refusal to provide the

27

Ex. A at 267-68.) "When an employee refuses to show up for work after being informed that her failure to do so will result in the loss of her job, the employer has presented a valid, nonretaliatory reason for terminating that employee." *Willis v. Conopco, Inc.*, 108 F.3d 282, 287 (11th Cir. 1997). Because plaintiff has failed to rebut the Board's non-retaliatory reason for firing Butler, the Board is entitled to a judgment as a matter of law on the ADA retaliation claim.

### FMLA Interference Claim

Plaintiff contends that the Board improperly calculated Butler's intermittent FMLA leave time, causing her to run out of FMLA leave before she had actually exhausted her statutorily allotted time. Plaintiff also claims that the Board failed to compensate Butler properly for her FMLA hours. In her deposition, Butler acknowledged that she exhausted her FMLA leave time at some point during her employment with the Board. (Def.'s Ex. A at 234-35.)

The FMLA provides that employees may take up to twelve weeks of unpaid leave due to, *inter alia*, serious medical conditions. 29 U.S.C. § 2612(a)(1)(D); *see also Graham v. State Farm Mut.*

---

accommodations she requested. However, there is no logical nexus between the Board's inability to accommodate Butler's medical impairments and plaintiff's contention that her termination was retaliation for engaging in statutorily protected expression. Proving that the Board refused to accommodate Butler's impairments is not the same thing as proving that its proffered reasons for firing her are a pretext for retaliation.

*Ins. Co.*, 193 F.3d 1274, 1275 (11th Cir. 1999).  "To state a FMLA interference claim, a plaintiff must demonstrate that [she] was entitled, under the FMLA, to a benefit that [she] was denied." *Drago*, 453 F.3d at 1306.  Here, the record is bereft of any evidence, beyond Butler's conclusory allegations, that the Board interfered with Butler's rights under the FMLA.  Plaintiff has not produced any time sheets or other documents to support his conclusory allegations that the Board improperly calculated Butler's FMLA leave time.  Plaintiff has also failed to cite any legal authority to support his allegation that the Board's method of calculating Butler's leave time violated Department of Labor regulations.  Because plaintiff has failed to raise a genuine issue of material fact, a reasonable jury could not conclude that the Board interfered with Butler's rights under the FMLA. Accordingly, the Board is entitled to a judgment as a matter of law on the FMLA interference claim.

### FMLA Retaliation Claim

To establish a *prima facie* case of retaliation under the FMLA, a plaintiff must show that: 1) she engaged in a statutorily protected activity, 2) she suffered an adverse employment decision, and 3) the decision was causally related to the protected activity. *See Strickland v. Water Works & Sewer Bd.*, 239 F.3d 1199, 1207 (11th Cir. 2001).  If the plaintiff makes out

a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for the adverse employment action. *See Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006). If the defendant does so, the plaintiff must then show that the proffered reason is pretextual. *Id.*

The parties agree that Butler's requesting FMLA leave on April 25, 2005 constitutes protected activity. Plaintiff argues that the following acts amount to adverse employment actions: 1) Ray harassing Butler about attendance and tardiness, 2) Ray improperly calculating Butler's FMLA leave, 3) Ray calling Butler while Butler was in the hospital in order to criticize her for damaging the Board's reputation, 4) Ray requiring Butler to teach four make-up classes in one week after she got out of the hospital, and 5) Butler's termination on June 8, 2006. Adverse employment actions must meet a "minimum threshold of substantiality." *See Wideman v. Wal-Mart Stores, Inc.*, 141 F.3d 1453, 1456 (11th Cir. 1998); *see also Garrett v. UAB*, 507 F.3d 1306, 1316 (11th Cir. 2007). To establish an adverse employment action, the plaintiff must show that "a reasonable employee would have found the challenged action materially adverse." *Burlington N. & Santa Fe Ry. Co.*, 548 U.S. 53, 68, 126 S. Ct. 2405, 2415 (2006). An action is materially adverse if it might have

dissuaded a reasonable worker from making or supporting a charge of discrimination. *Id.*

Of the actions that plaintiff cites, only Butler's termination amounts to an adverse employment action. As mentioned previously, plaintiff has failed to offer any evidence to support his allegations with respect to the improper calculation of FMLA leave time. Furthermore, Ray's chastising Butler for her frequent absences does not cross the minimum threshold of substantiality. Federal employment law does not "set out a general civility code for the American workplace." *Id.* at 68 (*quoting Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80, 118 S. Ct. 998, 1002 (1998)). An employer has a right to reprimand an employee for violating attendance rules. Similarly, requiring Butler to make up four of the class she had missed while in the hospital within one week is not something that a reasonable employee could find materially adverse.[11]  An

---

[11] With the exception of her termination, plaintiff has offered no evidence as to when the alleged adverse employment actions specifically occurred. Therefore, even if requiring Butler to make-up her missed classes within a week was an adverse employment action, the court is unable to analyze the causal connection prong of the *prima facie* case. Butler mentioned in her letter of complaint that the episode occurred "[d]uring 2005." (Pl.'s Ex. 23.) Plaintiff has not pointed to any evidence of causal connection beyond the temporal proximity between her protected expression and the adverse employment action. If this episode took place in May of 2005 (the month after Butler requested FMLA leave) there might be sufficient temporal proximity to establish causation (*i.e.*, that the events are not completely unrelated). But, if it happened in December of 2005, the causal connection prong would not be satisfied. Because plaintiff cannot narrow down the date of the alleged action with more particularity, he cannot prove the causal connection prong of his *prima facie* case, even assuming that requiring Butler to make up her classes within one week was a materially adverse action.

employee's decision to request FMLA leave "cannot immunize that employee from those petty slights or minor annoyances that often take place at work and that all employees experience." *Burlington*, 548 U.S. at 68, 124 S. Ct. at 2415.   Therefore, the only adverse act at issue is Butler's termination.

A causal connection can be demonstrated by evidence that "the decision-makers were aware of the protected conduct, and that the protected activity and the adverse action[] were not wholly unrelated." *Shannon v. Bellsouth Telecomm., Inc.*, 292 F.3d 712, 716 (11th Cir. 2002).   "A plaintiff satisfies [the causal connection prong] if [he] provides sufficient evidence of knowledge of the protected expression and that there was a close temporal proximity between this awareness and the adverse action." *Higdon v. Jackson*, 393 F.3d 1211, 1220 (11th Cir. 2004) (internal quotations and punctuation omitted).   "Close temporal proximity" between the protected expression and the adverse act is sufficient circumstantial evidence of a causal connection for purposes of stating a *prima facie* case. *Id.*   However, "in the absence of any other evidence of causation, a three month proximity is insufficient to establish causation." *Edmondson v. Bd. of Trustees*, 258 Fed. Appx. 250, 254 (11th Cir. 2007); *see also Wascura v. City of S. Miami*, 257 F.3d 1238, 1248 (11th Cir. 2001) (holding that, by itself, a three and one-half month gap

between protected expression and the adverse act is insufficient to establish causation).

Butler requested FMLA leave in April of 2005 and was fired in June of 2006.  A temporal gap in excess of one year between the protected expression and the adverse employment action is not enough to make out a *prima facie* case when there is no other evidence of causation, as is the case here.  Therefore, plaintiff cannot establish a *prima facie* case of FMLA retaliation.[12] Accordingly, the Board is entitled to a judgment as a matter of law on this claim.

### Conclusion

For the aforementioned reasons, the court will grant the Board's motion for summary judgment by separate order.

DONE this 27th day of May, 2008.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE

---

[12] Even if plaintiff could make out a *prima facie* case, he would still be unable to rebut the Board's proffered legitimate, non-retaliatory reason for firing Butler--her admitted pattern of absences and tardiness.